ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| YARIMAR HENRÍQUEZ TORRES<br><br>Recurrida<br><br>v.<br><br>JOSEAN ESTREMERA NIEVES<br><br>Peticionario | TA2026CE00400 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Arecibo<br><br>Caso Núm.: AR2025RF00062<br><br>Sobre: Alimentos-Menores de Edad y otros |
|---|---|---|

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 18 de mayo de 2026.

Comparece ante nos el Sr. Josean Estremera Nieves (señor Estremera Nieves o peticionario) mediante recurso de *certiorari.* Solicita nuestra intervención para revocar dos (2) dictámenes emitidos el 5 de marzo de 2026[2], por el Tribunal de Primera Instancia, Sala Superior de Arecibo (TPI). A través de los referidos pronunciamientos judiciales, el TPI: 1) declaró Ha Lugar una solicitud de reconsideración presentada por la Sra. Yarimar Henríquez Torres (señora Henríquez Torres o recurrida); y 2) enmendó una *Resolución* final de alimentos a los fines de imponerle al peticionario el pago de ciertos gastos de uniformes y materiales educativos de cuido a favor del menor M.E.H.

Por los fundamentos que expondremos a continuación, anticipamos la expedición del auto de *certiorari* solicitado y confirmamos los dictámenes recurridos.

**I.**

La causa de autos se inició el 23 de enero de 2025, ocasión en que la señora Henríquez Torres presentó una *Demanda* de filiación y

---

[1] Mediante Orden Administrativa DJ-2025-063B emitida el 20 de abril de 2026 se enmendó la composición de los paneles.
[2] Notificados el 6 de marzo de 2026 y el 16 de marzo de 2026, respectivamente.

alimentos contra el señor Estremera Nieves.[3] En síntesis, alegó ser la madre con patria potestad y custodia del menor M.E.H. Relató que convivió con el señor Estremera Nieves por un término de seis (6) meses, lo que resultó en su embarazo y posterior alumbramiento. Adujo que el señor Estremera Nieves no había querido reconocer al menor. Como consecuencia, peticionó al foro recurrido que declarase al demandado como padre de M.E.H., y también solicitó el pago de alimentos a favor de este último.

El 27 de febrero de 2025, el señor Estremera Nieves presentó su *Contestación a Demanda* y *Reconvención.*[4] Sostuvo que previo al embarazo de la demandante hubo una separación entre las partes, por lo que le había requerido realizar una prueba de paternidad para confirmar la filiación. En su *Reconvención,* solicitó al foro de instancia que ordenase una prueba de paternidad. Arguyó que de ser positivo el resultado, reconocería al menor y cumpliría con las obligaciones impuestas por ley.

Superados varios incidentes procesales, —incluyendo una orden[5] del foro impugnado requiriendo a las partes y al menor someterse a una prueba de ADN— el 27 de mayo de 2025, el TPI emitió una *Sentencia* mediante la que declaró Ha Lugar la *Demanda* de epígrafe.[6] Proclamó al demandado como padre del menor M.E.H., toda vez que las pruebas de ADN arrojaron un resultado positivo. Exigió la corrección del Certificado de Nacimiento ante el Registro Demográfico para enmendar el nombre del menor a los fines de añadir el apellido paterno, y para que surgiese el señor Estremera Nieves como padre de este. Asimismo, refirió el caso

---

[3] Véase, Entrada Núm. 1, expediente digital del caso AR2025RF00062 en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC-TPI).

[4] Véase, Entrada Núm. 7, expediente digital del caso AR2025RF00062 en el SUMAC-TPI.

[5] Véase, Entrada Núm. 10, expediente digital del caso AR2025RF00062 en el SUMAC-TPI.

[6] Véase, Entrada Núm. 23, expediente digital del caso AR2025RF00062 en el SUMAC-TPI.

al Examinador de Pensiones Alimentarias (EPA) para propósitos de la implementación de una pensión alimentaria.

En lo atinente a los asuntos del caso que nos ocupa, el 6 de agosto de 2025, la señora Henríquez Torres radicó un *Escrito Presentando Planilla de Información Personal y Económica Enmendada* (PIPE).[7] Se desprende del expediente que, entre los gastos informados, se encuentran aquellos relacionados al cuido del menor.

Luego de celebradas varias vistas ante el EPA para fijar la pensión alimentaria, el 16 de enero de 2026, el foro *a quo* emitió una *Resolución*.[8] En ella, impuso al demandado el pago de $450.00 mensuales en concepto de pensión alimentaria final. Adicionalmente, ordenó al señor Estremera Nieves pagar $900.00 en concepto de balance adeudado retroactivo y el cincuenta por ciento (50%) de los gastos médicos que no estuviesen cubiertos por el plan médico del menor.

En lo que nos atañe, el 3 de febrero de 2026, la señora Henríquez Torres presentó un *Escrito en Solicitud Nunc Pro Tunc y Reconsideración* en el que solicitó al foro de instancia la imposición de una partida en concepto de gastos escolares suplementarios.[9] En resumen, alegó que en la última vista celebrada ante el EPA, ambas partes tuvieron la oportunidad de estipular dicho gasto, pero el demandado rechazó hacerlo. La referida petición fue declarada Ha Lugar por el TPI mediante *Orden* y *Resolución Nunc Pro Tunc* a esos efectos, e impuso al señor Estremera Nieves el pago del cincuenta por ciento (50%) de los gastos de uniformes y materiales educativos del cuido del menor M.E.H.[10]

---

[7] Véase, Entrada Núm. 51, expediente digital del caso AR2025RF00062 en el SUMAC-TPI, Anejo 1.

[8] Véase, Entradas Núm. 55, 57, 73 y 74, expediente digital del caso AR2025RF00062 en el SUMAC-TPI.

[9] Véase, Entrada Núm. 75, expediente digital del caso AR2025RF00062 en el SUMAC-TPI.

[10] Véase, Entradas Núm. 82 y 83, expediente digital del caso AR2025RF00062 en el SUMAC-TPI.

No conteste, el señor Estremera Nieves compareció ante nos mediante recurso de *certiorari,* a través del cual le imputó al TPI la comisión de los siguientes errores:

A. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA EN SU ORDEN DEL 5 DE MARZO DE 2026 AL DECLARAR CON LUGAR UNA SOLICITUD DE RECONSIDERACION CUANDO LA MISMA NO EXPONE NI ALEGA LA COMISION DE ERROR DE HECHO NI DE DERECHO QUE AMERITEN RECONSIDERARSE EN LA RESOLUCION DE ALIMENTOS EMITIDA.

B. ERR[Ó] EL TRIBUNAL AL ALTERAR LA ESTIPULACION ENTRE LAS PARTES E INCLUIR UNA PARTIDA DE GASTOS DE UNIFORMES Y MATERIALES EDUCATIVOS QUE FUE DISCUTIDA POR LAS PARTES PERO NO FUE ESTIPULADA Y NO FORMO PARTE DE LA ESTIPULACION VIOLANDO EL DERECHO AL DEBIDO PROCESO DE LEY.

C. ERRÓ EL TRIBUNAL AL ALTERAR UNA ESTIPULACION ENTRE LAS PARTES VALIDA Y BAJO JURAMENTO Y LA CUAL SE ACOJIO POR EL HONORABLE TRIBUNAL MEDIANTE RESOLUCION, SIN QUE MEDIARAN CIRCUNSTANCIAS PARA ALTERAR LA MISMA.[11]

En cumplimiento de nuestra *Resolución,* la señora Henríquez Torres presentó su *Oposición a Expedición de Auto de Certiorari* el 13 de abril de 2026.[12] Con el beneficio de ambas comparecencias, procedemos a resolver.

## II.

## A.

El auto de *certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones judiciales de un foro inferior y corregir algún error cometido por éste. *800 Ponce de León v. AIG,* 205 DPR 163, 174 (2020); *IG Builders et al., v. BBVAPR,* 185 DPR 307, 337-338 (2012); *García v. Padró,* 165 DPR 324, 334 (2005). A diferencia de la apelación, el foro revisor tiene la facultad para expedir o denegar el recurso de *certiorari* de manera discrecional. *García v. Padró, supra.* El examen al auto discrecional que realizamos antes de decidir el

---

[11] Véase, Entrada Núm. 1, expediente digital del caso TA2026CE00400 en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC-TA).

[12] Véase, Entrada Núm. 3, expediente digital del caso TA2026CE00400 en el SUMAC-TA.

curso a seguir no se da en el vacío ni en ausencia de otros parámetros. *800 Ponce de León v. AIG, supra,* pág. 176. Ello así, porque "el adecuado ejercicio de la discreción judicial está inexorable e indefectiblemente atado al concepto de la razonabilidad". *García v. Padró, supra,* pág. 335

Es sabido que la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, delimita las instancias en las cuales este foro intermedio tiene autoridad para atender los recursos de *certiorari*. En su parte pertinente, la norma dispone que, por excepción, estamos autorizados a expedir un recurso de *certiorari* en los **casos de relaciones de familia**. *Id.* En el caso de denegar la expedición de un recurso de *certiorari,* no estamos obligados a fundamentar nuestra decisión. *Id.*

Además del examen objetivo antes descrito, para ejercer sabia y prudentemente nuestra facultad discrecional al determinar si expedimos o denegamos un recurso de *certiorari,* nos guiamos por la Regla 40 del Reglamento del Tribunal de Apelaciones, *Criterios para la expedición del auto de certiorari,* según enmendada, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, 215 DPR __ (2025). Las guías reglamentarias allí prescritas deben aplicarse al recurso en cuestión de manera integral, no fragmentada, sin menoscabar una razonada discreción judicial y siempre en ánimo de impartir justicia apelativa. Claro está, es norma firmemente asentada que este tribunal intermedio no interviene con las determinaciones emitidas por el foro primario ni sustituye su criterio discrecional, "*salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad, incurrió en craso abuso con el ejercicio de la discreción, o que incurrió en error manifiesto*". (Cursivas en el original). *Citibank et al. v. ACBI et al.,* 200 DPR 724, 736 (2018); *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 771 (2013); *Ramos Milano v. Wal-Mart,* 168 DPR 112, 121 (2006); *Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000); *Lluch v. España Service Sta.,* 117 DPR 729, 745 (1986).

**B.**

La Regla 47 de Procedimiento Civil, 32 LPRA Ap. V, R. 47, regula todo lo atinente a la moción de reconsideración. En esencia, la moción de reconsideración es el mecanismo procesal que una parte adversamente afectada por una determinación judicial tiene disponible para peticionar al tribunal que considere nuevamente su decisión. *Otero Vélez v. Schroder Muñoz,* 200 DPR 76, 86 (2018). Tiene como propósito brindarle al foro que emitió el dictamen la oportunidad de subsanar cualquier error que hubiese cometido. *Id.* La precitada regla establece lo siguiente:

> La parte adversamente afectada por una orden o resolución del Tribunal de Primera Instancia podrá presentar, dentro del término de cumplimiento estricto de quince (15) días desde la fecha de la notificación de la orden o resolución, una moción de reconsideración de la orden o resolución.
>
> La parte adversamente afectada por una sentencia del Tribunal de Primera Instancia podrá presentar, dentro del término jurisdiccional de quince (15) días desde la fecha de archivo en autos de copia de la notificación de la sentencia, una moción de reconsideración de la sentencia.
>
> La moción de reconsideración **debe exponer con suficiente particularidad y especificidad los hechos y el derecho que el promovente estima que deben reconsiderarse y fundarse en cuestiones sustanciales relacionadas con las determinaciones de hechos pertinentes o conclusiones de derecho materiales**.
>
> La moción de reconsideración que no cumpla con las especificidades de esta regla será declarada "sin lugar" y se entenderá que no ha interrumpido el término para recurrir. Una vez presentada la moción de reconsideración quedarán interrumpidos los términos para recurrir en alzada para todas las partes. Estos términos comenzarán a correr nuevamente desde la fecha en que se archiva en autos copia de la notificación de la resolución resolviendo la moción de reconsideración.
>
> La moción de reconsideración se notificará a las demás partes en el pleito dentro de los quince (15) días establecidos por esta regla para presentarla ante el tribunal de manera simultánea. El término para notificar será de cumplimiento estricto. (Énfasis nuestro). Regla 47 de Procedimiento Civil, *supra.*

**C.**

La obligación de proveer alimentos por parte de un progenitor a su hijo está revestida del más alto interés público. *Ríos Figueroa v. López*

*Maisonet*, 216 DPR __ (2025); 2025 TSPR 86. Además, el bienestar de los menores constituye parte integral de la política pública del Gobierno de Puerto Rico. *De León Ramos v. Navarro Acevedo*, 195 DPR 157, 169 (2016). El derecho de los menores a recibir alimentos va de la mano con el propio derecho a la vida consagrado en la Carta de Derechos de nuestra Constitución. *Ríos Figueroa v. López Maisonet, supra; De León Ramos v. Navarro Acevedo, supra*; Art. II, Sec. 7, Const. PR, LPRA, Tomo 1. El deber de ambos progenitores de alimentar a los hijos es inherente a la filiación. Art. 558(b) del Cód. Civil, 31 LPRA sec. 7104(b). En armonía, el Artículo 653 del Código Civil, 31 LPRA sec. 7531, dispone lo siguiente sobre la obligación alimentaria:

> Se entiende por alimentos todo lo que es indispensable para el sustento, la vivienda, la vestimenta, la recreación y la asistencia médica de una persona, según la posición social de su familia.
>
> **Cuando el alimentista es menor de edad, los alimentos comprenden también su educación**, **las atenciones de previsión acomodadas a los usos y a las circunstancias de su entorno familiar y social** y los gastos extraordinarios para la atención de sus condiciones personales especiales.

En cuanto a la cuantía de los alimentos del menor de edad, el Artículo 666 del Código Civil, 31 LPRA sec. 7562, establece que "se fija siguiendo los criterios dispuestos en la ley especial complementaria". Claro está, la determinación de la pensión de alimentos, **la cual yace en el prudente arbitrio del juzgador**, debe velar por que la cuantía que se establezca cumpla con el **principio de proporcionalidad**. (Énfasis nuestro). *Llorens Becerra v. Mora Monteserín*, 178 DPR 1003, 1016 (2010). Partiendo de este principio es que se han adoptado, por vía estatutaria y reglamentaria, parámetros más precisos para dirigir la ardua labor de determinar la capacidad económica con que cuentan los padres y las madres para suplir las necesidades de sus hijos. *Id.*, págs. 1016-1017.

Cónsono con lo anterior, la Ley Núm. 5 de 30 de diciembre de 1986, *Ley Orgánica de la Administración para el Sustento de Menores*, 8

LPRA sec. 501 *et seq.* (Ley 5), tiene como fin asegurar el cumplimiento de las obligaciones alimentarias de los padres y madres para con sus hijos menores de edad. *De León Ramos v. Navarro Acevedo, supra*, págs. 170-171. Por su parte, las *Guías mandatorias para fijar y modificar pensiones alimentarias en Puerto Rico*, Reglamento Núm. 9535 del 15 de febrero de 2024 (Reglamento 9535), establecen unos parámetros objetivos específicos que deben utilizarse en el proceso de **determinar el monto de las pensiones de una manera uniforme y equitativa tomando en consideración los ingresos de los progenitores y las necesidades de los hijos**. *De León Ramos v. Navarro Acevedo, supra*, pág. 171. De acuerdo con este ordenamiento, al determinar la cuantía de la pensión se evalúa tanto la situación económica de los alimentantes, como las necesidades particulares de los alimentistas. *Martínez v. Rodríguez,* 160 DPR 145, 154 (2003).

Es sabido que, en materia de alimentos, **las sentencias que los fijan no constituyen cosa juzgada, por lo que siempre estarán sujetas a revisión.** (Énfasis nuestro). *De León Ramos v. Navarro Acevedo, supra*, pág. 176. De ordinario, la revisión se efectúa cada tres años, una vez fue originalmente fijada o modificada. Sin embargo, la revisión podría anticiparse, si cualquiera de las partes puede demostrar justa causa, debido a un cambio sustancial en las circunstancias de la persona custodia, de la persona no custodia o del menor alimentista. Arts. 2(38) y 19(c) de la Ley 5, 8 LPRA secs. 501(38) y 518(c). Es decir, se entiende que ha mediado *justa causa*, "cuando existan cambios sustanciales en las circunstancias del alimentista o del alimentante[,] tales como[:] la encarcelación de la persona no custodia, variaciones o cambios significativos o imprevistos en los ingresos, en la capacidad de generar ingresos, en los egresos, gastos o capital de la persona custodia o de la persona no custodia, o en los gastos, necesidades o circunstancias del menor". Art. 19(c) de la Ley 5, 8 LPRA sec. 518(c).

**III.**

Como se sabe, este Foro revisor tiene discreción para expedir o denegar un recurso de *certiorari* interlocutorio. Para ello, ejercemos un examen objetivo a base de la Regla 52.1 de Procedimiento Civil, *supra*, y otro subjetivo, partiendo de los criterios consignados en la Regla 40 de nuestra reglamentación, *supra.* En armonía con las referidas normas, y puesto que se trata de un caso de relaciones de familia, acordamos expedir el presente auto de *certiorari* al justipreciar que la controversia ante nuestra consideración amerita una resolución en sus méritos.

En el caso de epígrafe, el peticionario aduce que el TPI incidió: 1) al acoger una solicitud de reconsideración, aunque la moción no exponía ni alegaba la comisión de errores de hechos o de derecho que ameritasen reconsiderar la resolución de alimentos; 2) al incluir una partida de gastos de uniformes y materiales educativos que no fue estipulada por las partes; y 3) al enmendar la pensión alimentaria producto de una estipulación, sin que se presentasen circunstancias para revisarla.

En riposta, la recurrida arguye que la Regla 47 de Procedimiento Civil, *supra*, no debe interpretarse de manera restrictiva y que la solicitud de reconsideración presentada se limitaba a señalar los asuntos que faltaban por adjudicar. Además, plantea que no hubo tal cosa como una estipulación alterada, puesto que se resolvieron asuntos para los cuales se necesitaba su disposición. Sostiene que, toda vez que no existía una estipulación final sobre los gastos de uniforme y materiales educativos para el cuido del menor, no era necesario demostrar circunstancias extraordinarias para su modificación.

No nos convencen los argumentos esgrimidos por el peticionario. Veamos.

Con respecto al primer señalamiento de error, colegimos que el *Escrito en Solicitud Nunc Pro Tunc y Reconsideración* cumplió con los requisitos de forma de la Regla 47 de Procedimiento Civil, *supra*. El

peticionario alega que el escrito presentado por la recurrida no exponía la comisión de errores de hechos o de derecho. Según ya dijimos, la moción de reconsideración debe exponer con especificidad los hechos y el derecho que deben ser reconsiderados. En este caso, la moción en cuestión sí cumplió con el estándar de la precitada Regla 47 de Procedimiento Civil, *supra.* Es decir, la recurrida expuso con especificidad los hechos y el derecho aplicable, así como el remedio solicitado, a saber: la inclusión en la pensión alimentaria de los gastos de uniforme y materiales educativos de cuido del menor M.E.H.[13] Aunque "el nombre no hace la cosa", *Meléndez Ortiz v. Valdejully,* 120 DPR 1, 24 (1987), no solamente estaba titulada como una moción de tal naturaleza, sino que su contenido cumplió con el ordenamiento procesal vigente.

Ahora, discutiremos el segundo y tercer error de manera conjunta por estar relacionados entre sí. Luego de un análisis sosegado del expediente ante nuestra consideración, no advertimos que el curso decisorio del foro *a quo* haya sido equivocado. El peticionario argumenta que el dictamen del TPI impuso una partida adicional que no fue estipulada por las partes, y sin haberse suscitado circunstancias que merecieran su revisión. Huelga destacar que la recurrida había anticipado en su PIPE enmendada ciertos gastos educativos y de cuido.[14] A lo anterior se añade que en la *Resolución* recurrida quedó consignado el apercibimiento hecho a las partes sobre el derecho que tienen de solicitar alguna modificación a la pensión luego de transcurridos tres (3) años, o cuando entiendan que existe algún cambio sustancial o imprevisto en las circunstancias.

Si bien es cierto que el estado de Derecho aplicable prescribe que la revisión de la pensión alimentaria puede anticiparse antes de los tres años si cualquiera de las partes demuestra que ha habido un cambio

---

[13] Véase, Entrada Núm. 75, expediente digital del caso AR2025RF00062 en el SUMAC-TPI.

[14] Véase, Entrada Núm. 51, expediente digital del caso AR2025RF00062 en el SUMAC-TPI.

sustancial en las circunstancias, no deja de ser menos cierto que la Ley aplicable contempla su revisión cuando surgen **cambios en las necesidades o circunstancias del menor**. La PIPE enmendada presentada por la señora Henríquez Torres es diáfana en su contenido. Los gastos de cuido consignados en la PIPE **configuraron los cambios en las necesidades del menor aludidos en la Ley 5.** Además, el peticionario solamente debe pagar un cincuenta por ciento (50%) de los gastos en disputa. Es imprescindible recordar que los gastos de educación, vestimenta y aquellas atenciones adecuadas a los usos y circunstancias del entorno familiar, están subsumidos en el concepto de alimentos. De igual forma, la determinación de la pensión de alimentos recae en el prudente arbitrio del juzgador. En el caso de epígrafe, los gastos solicitados por la recurrida —los cuales tenía derecho a solicitar a favor de su hijo— comprenden los alimentos que deben ser provistos al menor por el alimentante. El TPI actuó conforme a la discreción que nuestro ordenamiento jurídico le concede. Por lo tanto, concluimos que los dictámenes impugnados no contravienen los contornos estatutarios y jurisprudenciales vigentes.

**IV.**

Por los fundamentos antes esbozados, expedimos el auto de *certiorari* solicitado y confirmamos los pronunciamientos judiciales recurridos.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones. El Juez Adames Soto disiente con escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel Especial[1]

| | | |
|---|---|---|
| YARIMAR HENRIQUEZ TORRES<br>Recurrida<br><br>v.<br><br>JOSEAN ESTREMERA NIEVES<br>Peticionario | TA2026CE00400 | *Certiorari*<br>procedente del<br>Tribunal de<br>Primera Instancia,<br>Sala de Arecibo<br><br>Caso Núm.<br>AR2025RF00062<br><br>Sobre:<br>Alimentos-Menores<br>de Edad y otros |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli

### VOTO DISIDENTE DEL JUEZ NERY E. ADAMES SOTO

a.

Limitándome a llamar la atención sobre los datos procesales materiales que informan mi disenso, el 27 de mayo de 2025, el Tribunal de Primera Instancia (TPI) emitió Sentencia declarando al menor MEH hijo del Sr. Josean Estremera Nieves, (señor Estremera Nieves o peticionario). Junto a tal determinación el foro primario ordenó referir el asunto al Examinador de Pensiones de Alimentos (EPA), para que evaluara el caso y recomendara la imposición de una pensión alimentaria en favor del menor.[2]

A tenor, mediante *Orden* del 11 de junio de 2025, el licenciado Méndez Rodríguez, EPA; pautó el 11 de agosto de 2025 para celebrar la vista sobre pensión alimentaria; dio por iniciado el periodo de descubrimiento de prueba; concedió diez días a las partes para que presentaran las respectivas *Planillas de información personal y económica* (PIPE), y; advirtió que las negociaciones sobre la pensión alimentaria



---

[1] Mediante Orden Administrativa DJ-2025-063B emitida el 20 de abril de 2026 se enmendó la composición de los paneles.
[2] Entrada Núm. 23 de SUMAC.

serían conducidas por las partes antes de la celebración de la vista señalada.

En efecto, las partes condujeron el descubrimiento de prueba y presentaron sus respectivas PIPEs.[3] La PIPE de la recurrida fue anejada a SUMAC el 19 de junio de 2025, **y desde esa fecha las partes sabían de los gastos relacionados al cuido del menor**, según fueron allí incluidos.

Con todo, llegada la fecha de la vista de pensión alimentaria pautada, surge del *Informe y recomendaciones* suscrito por el EPA, que **las partes comparecieron a esta junto a sus abogados y acordaron lo siguiente**: "Las partes estipularon fijar provisionalmente la pensión alimentaria en la suma de $450.00 mensuales (pagaderos los primeros diez (10) días de todos los meses), a partir del 27 de mayo de 2025, a ser pagados directamente mediante cheque, giro o depósito bancario, a la ATH Móvil de la Sra. Yarimar Henríquez Torres. Ambas partes deberán llevar récord de lo pagado y lo recibido. El primer pago por la suma de $450.00 por concepto de pensión alimentaria correspondiente al mes de agosto de 2025 debe realizarse en o antes del 26 de agosto de 2025. El Sr. Josean Estremera Nieves pagará el 50% de los gastos médicos no cubiertos por el plan médico, de los menores del(la) menor, previa presentación de evidencia en un término de diez (10) días".[4]

Nótese que, **del referido *Informe* del EPA, ni en ninguna parte a este momento, se condicionó el establecimiento de la pensión provisional a la consideración posterior de un pago por cuido del menor**, a pesar de que, insisto, en la PIPE de la recurrida se había dado cuentas de ello. Sobre lo mismo, véase que la abogada de la recurrida no hizo expresión alguna en esta vista acerca de la futura inclusión de una partida adicional en la pensión establecida para gastos educativos.



---

[3] Entrada Núm. 27 y Núm. 29 de SUMAC, respectivamente.
[4] Entrada Núm. 55 de SUMAC.

En armonía con lo recomendado, el 13 de agosto de 2025, el TPI emitió una *Resolución* acogiendo en integridad, **sin variación alguna**, el referido *Informe* del EPA, por tanto, aprobando la pensión alimentaria provisional **acordada por las partes**.[5] Una vez más, en la referida *Resolución* no se hizo constar salvedad, condición o señalamiento alguno sobre una presunta partida adicional, de ningún tipo, a considerar en la pensión alimentaria. La *Vista final* para establecer la pensión alimentaria fue pautada para el 16 de octubre de 2025.

El expediente judicial electrónico refleja que, antes de la celebración de la vista final pautada, y por disposición expresa del TPI, las partes llevaron a cabo conversaciones y se intercambiaron ofertas para tratar de finiquitar los asuntos pendientes, a la vez que continuaron con el descubrimiento de prueba.[6]

La *Vista final* se pospuso para el 14 de enero de 2026, por causa de enfermedad de la abogada del peticionario.

Así las cosas, la *Vista final* fue celebrada en la fecha pautada, mediante videoconferencia, teniendo como resultado que el EPA suscribiera un *Informe y recomendaciones* para la atención del TPI. Debe subrayarse que a la referida vista comparecieron las partes, **con sus respectivos abogados**. Del *Informe* surge que "**las partes acordaron, bajo juramento, fijar como final la pensión alimentaria provisional existente**", y, a renglón seguido se precisaron las partidas que compondrían dicha pensión alimentaria **estipulada**, idéntica a la pensión alimentaria provisional previamente acordada.[7] Lo único que se añadió en la recomendación fue un plan de pago para la deuda atrasada y la imposición de una partida por honorarios de abogados.

---

[5] Entrada Núm. 57 de SUMAC.
[6] Ver Entradas Núm. 58, 60, 62, 65, 71 de SUMAC. Cabe mencionar que, a ese momento, la controversia mayor ante la atención del TPI refería a cómo se estaban conduciendo las relaciones paterno-filiales, asunto que no incumbe a este voto disidente.
[7] Entrada Núm. 73 de SUMAC.

TA2026CE00400 – Voto Disidente 4

Obsérvese que en este *Informe* del EPA **no** se hizo constancia o mención de que las partes *condicionaran* la aprobación de dicha estipulación por el TPI a la futura inclusión de alguna partida adicional a pagar por el peticionario. Con mayor precisión, en ninguna parte de su *Informe* el EPA dejó expresión de que la estipulación de la pensión alimentaria estaría sujeta a modificación por posible inclusión de gastos no previstos en el propio acuerdo de las partes, o que todavía se estuviera negociando entre estas, algún gasto en controversia. Tampoco surge del *Informe* que la abogada de la recurrida llamara la atención al EPA sobre algún gasto pendiente por estipular.

Es así como, mediante *Resolución* del 16 de enero de 2026, el TPI aprobó el *Informe* referido por el EPA en integridad, sin cambio alguno, y expresamente plasmó que "aprueba el mismo **y la estipulación a la que llegaron las partes, la que se hace formar parte de la presente Resolución**".[8] (Énfasis y subrayado provistos). En el mismo dictamen, luego del TPI desglosar las cantidades y los términos en que se pagaría la pensión alimentaria estipulada por las partes, incluyó la siguiente información: "**Las partes entienden que la pensión alimentaria es justa y razonable; así como atiende adecuadamente las necesidades de los menores**. Se apercibe a las partes que, según lo dispuesto en el Art. 19 de la Ley, tienen derecho a solicitar la modificación de la pensión alimentaria transcurridos tres años **o cuando entiendan que existe un cambio sustancial, significativo o imprevisto de las circunstancias**. Se advierte al padre alimentante".[9] (Énfasis provisto).

De nuevo, véase que en este dictamen final no se hizo salvedad alguna sobre una condición suspensiva o de otro tipo que sirviera como fundamento para modificar la estipulación alcanzada por las partes, según recomendada por el EPA y aprobada por el TPI. Ni siquiera se incluyó una nota al calce en la que la abogada de la recurrida



---

[8] Entrada Núm. 74 de SUMAC.
[9] *Id.*

manifestara inconformidad con la estipulación aprobada, o advertencia de algún gasto no cubierto en el acuerdo.

b.

La estipulación de la pensión alimentaria por los primogenitores de un menor ha sido tema remachado por la jurisprudencia de nuestro Tribunal Supremo y, añado, no hay nada novel en la situación fáctica ante nuestra consideración que difiera de los asuntos tratados por el alto foro. Así, en *Ex parte Negrón Rivera y Bonilla*, 120 DPR 61, 74 (1987), se expresó que, "Reiteradamente hemos resuelto que **una estipulación suscrita por las partes y aceptada por el tribunal, que finaliza un pleito o como en este caso un incidente dentro del pleito, constituye un contrato de transacción que las obliga**", para lo cual citó en apoyo a *Sucn. Román v. Shelga Corp.*, 111 D.P.R. 782 (1981); *Lausell Marxuach v. Díaz de Yáñez*, 103 D.P.R. 533 (1975); *Díaz Torres v. Rivera*, 96 D.P.R. 560 (1968); *Canino v. Bellaflores*, 78 D.P.R. 778 (1955). Hace apenas unos años, en *Betancourt v. Pastrana*, 200 DPR 169, 186 (2018), el Tribunal Supremo discurrió sobre el mismo asunto, y se reafirmó en la doctrina establecida.

Sépase que, en el citado *Ex parte Negrón Rivera y Bonilla*, supra, **el padre alimentante pretendía la revisión de una estipulación de pensión alimentaria que había sido aprobada por el Tribunal apenas veinticinco días antes de la solicitud de modificación. El Tribunal Supremo rechazó tal pretensión**.

Más aún, al reiterar la doctrina de que las "estipulaciones que finalizan un pleito, suscritas por las partes y aceptadas por el tribunal constituyen con contrato de transacción", en *McConnel v. Palau*, 161 DPR 734, 747 (2004), nuestro Tribunal Supremo acotó que, "como norma general, el juez que preside aceptará los convenios a los que las partes lleguen **y ello tendrá el efecto de cosa juzgada**". (Énfasis provisto).



La única diferencia discernible entre las estipulaciones en general *vis a vis* las que acontecen en el contexto del establecimiento de una pensión alimentaria es que, en esta última, "a manera de excepción, el juez debe asegurarse que lo acordado no es dañino para los menores, sino que satisface adecuadamente sus necesidades y el alimentante tiene medios económicos suficientes para cumplir lo acordado". *Ex parte Negrón Rivera y Bonilla*, supra, pág. 76.

c.

En el caso ante nuestra consideración no hay controversia alguna sobre el hecho de que las partes estuvieron representadas por abogados antes de estipular la pensión alimentaria provisional, y también cuando estipularon la pensión alimentaria final ante el EPA y el TPI respectivamente. No se puede atribuir entonces que el contenido de lo estipulado fuera por el desconocimiento de alguna de las partes, pues estuvieron legalmente asesoradas. Tampoco hay o debería haber controversia seria alguna sobre el hecho de que, al estipular la pensión alimentaria final las partes contaban con toda la información sobre los gastos del menor, finalizado el descubrimiento de prueba, que incluyó, entre otros, el intercambio de PIPEs, interrogatorios y admisiones. Es decir, al estipular la pensión alimentaria final, que contó con el aval de TPI, las partes lo hicieron con pleno conocimiento de los gastos del menor, y no incluyeron para su efectividad el cumplimiento de condición alguna, o mención de algún asunto pendiente.

Aduce la parte recurrida en su escrito en oposición a *certiorari* que, "el 6 de agosto de 2025, (Ent. #51) la parte recurrida presentó su PIPE Enmendada. Allí se especificó que cuando el menor adviniera un año de edad, éste tendría necesidades de uniformes en el cuido. El menor cumplió su primer año, 8 días antes de la vista final de alimentos. (Ent.

#1 anejo 2)".[10] Es decir, la propia parte recurrida admite que toda la información referente a los gastos del menor estaba disponible antes de que las partes estipularan la pensión final y fuera aprobada por el TPI mediante *Resolución,* pero no se ocupó de dejar constancia de la presunta desavenencia entre las partes para el pago de dicho gasto en ninguna documentación, previo a la vista final sobre prensión ante el TPI. Además, resulta irrisorio que la parte recurrida aduzca una y otra vez que llevó a la atención del EPA el reclamo sobre los gastos escolares, sin embargo, para ello solo logra citar la Entrada Núm. 51 de SUMAC, la cual se limita a la radicación de su PIPE, muchísimo antes de que las partes estipularan la pensión alimentaria final.

A partir de lo cual, si la parte recurrida hubiese tenido objeción a la estipulación final alcanzada, debió así señalarlo de manera oportuna, antes de que recayera el dictamen del Tribunal aprobándola. Ello, pues, repito, "las estipulaciones finalizan el pleito, una vez son suscritas por las partes y aceptadas por el tribunal constituyendo un contrato de transacción", en *McConnel v. Palau,* supra. A ello se une que, por disposición de la jurisprudencia discutida, si el propio tribunal *a quo* hubiese tenido alguna duda sobre el beneficio de la estipulación para el menor, debió haber inquirido a las partes sobre ello, antes de aprobarla. *Ex parte Negrón Rivera y Bonilla,* supra. No lo hizo, por el contrario, aprobó la estipulación en los términos acordados por las partes, incluyendo la advertencia de que "las partes entienden que **la pensión alimentaria es justa y razonable; así como atiende adecuadamente las necesidades de los menores.**[11]



Junto a lo anterior, aprecio clara lesión a la buena fe contractual de la parte peticionaria, que se sometió al dictamen final de TPI confiando en los términos que estipuló con la parte recurrida sobre la pensión alimentaria final. Por el contrario, no puedo atribuirle buena fe

---

[10] Oposición a expedición de recurso de *certiorari,* pág. 4.
[11] Id.

contractual a la parte recurrida que, conociendo la información completa para llegar a una estipulación final sobre la pensión alimentaria, esperó hasta después de su aprobación por el Tribunal para entonces solicitar su modificación a través de una moción de reconsideración. La estipulación de la pensión alimentaria no ubica fuera de la conducta fundamental exigida a las partes contratantes sobre la buena fe. Las declaraciones de voluntad **deben interpretarse en el sentido más conforme con la confianza que hayan podido suscitar de acuerdo con la buena fe**. *Ex parte Negrón Rivera y Bonilla,* supra, pág. 75, citando a L. Díez-Picazo, *Fundamentos del Derecho Civil Patrimonial,* Madrid, Ed. Tecnos, 1979, Vol. I, Cap. XI, Sec. 45, págs. 251-252.

Desde el concepto de la buena fe contractual la única interpretación posible que visualizo es que las partes en este caso, luego de concluir el descubrimiento de prueba y someter el asunto al EPA, presentaron la estipulación final de la pensión alimentaria ante el TPI, según fue aprobada, en la confianza de finiquitar el asunto, sin posposición de controversia alguna.

c.



A pesar de lo descrito, fue por vía de una *moción de reconsideración,* instada el 4 de febrero de 2026, a escasos días del TPI haber aprobado la estipulación sobre pensión alimentaria final presentada por las partes, que la parte recurrida alzó por primera vez un petitorio para que se incluyera una partida por alegados gastos escolares. Como fundamento sostuvo que, en su PIPE, ya había advertido que ello podría pasar, y que el **6 de febrero de 2025** el menor había sido matriculado en un cuido educativo. Incluyó, además, una serie de alegaciones, **sin alusión a prueba alguna que constara en el expediente del Tribunal para sustentarlas.**[12]

---

[12] Por ejemplo, afirmó que "recibió un reclamo de materiales y efectos escolares por el cuido por ser de carácter educativo y así se lo notificó al demandado; que le notificó al señor Estremera el gasto incurrido de uniformes exigidos en el cuido, toda vez que el

Incidió el TPI al acoger tal petición por varias razones, que enseguida explicito.

Primero, la moción de reconsideración, Regla 47 de Procedimiento Civil, 32 LPRA Ap. V, tiene como propósito y objetivo principal el darle la oportunidad al tribunal que dictó la sentencia cuya reconsideración se solicita, para que pueda enmendar o corregir los errores en que hubiese incurrido al dictarla. *Rivera v. Algarín* 159 DPR 482, 489 (2003); *Castro v. Sergio Estrada Auto Sales, Inc.*, 149 D.P.R. 213 (1999); *Lagares v. E.L.A.*, 144 D.P.R. 601 (1997). "Al solicitar la reconsideración pueden exponerse fundamentos no expuestos antes de que se haya dictado la sentencia o resolución, **pero *no pueden formularse por primera vez planteamientos que necesiten apoyo en prueba no presentada en juicio*.**" *Rivera v. Algarín*, supra, citando a Hernández Colón, *Derecho Procesal Civil: práctica jurídica de Puerto Rico*, San Juan, Ed. Michie, 1997, Cap. 46, Sec. 4601, pág. 294. (Énfasis provisto). No tengo duda de que, a través de la moción de reconsideración instada, la parte recurrida precisamente ***formuló por primera vez planteamientos que necesitaban apoyo en prueba que no presentó en el juicio***, los relativos al gasto escolar.

Afirmo lo anterior, por lo evidente, el que las partes estipularan la pensión alimentaria final tuvo como efecto el que la promovente de la causa de acción, la recurrida, no tuviera que desfilar prueba alguna en un juicio para demostrar los méritos de la *Demanda*. Esta es una de las ventajas mayores de las estipulaciones, que finiquitan una controversia entre las partes, prescindiendo del desfile de la prueba y, con esto, de los

---

menor cumplió su primer añito en enero de 2026 y otros gastos relativos al cuido del menor, entre ellos materiales y efectos, igualmente requeridos por el cuido; que a pesar de las gestiones oportunas extrajudiciales por la parte Demandante, para discutir asuntos de la vista pautada para el 14 de enero de 2026 a la 1:30, la parte demandada informó ese mismo día, a la 1:30 pm a la parte Demandante que aceptaba estipular la pensión provisional como final; luego de las conversaciones privadas, ante el Honorable Examinador la parte Demandada declinó estipular los mismos; al día de hoy, tenemos a un menor de edad, con una necesidad de uniformes y materiales escolares requeridos por su cuido, que garantiza, no solo su interés óptimo, sino que permite que la Demandante pueda laborar y contribuir al mantenimiento de sus hijos. Moción de reconsideración, págs. 3-4, Entrada Núm. 75 de SUMAC.

rigores de las vistas adversativas. *Ergo*, la parte recurrida no contaba con prueba alguna **presentada en el juicio** para sostener todas las nuevas alegaciones con las que pretendió la modificación de la pensión alimentaria recién estipulada y aprobada por el Tribunal. Ante lo cual, correspondía al TPI denegar dicha petición de plano.

Para mi sorpresa, en la Sentencia que suscriben mis respetados compañeros jueces de Panel se confirma la determinación del foro recurrido, al acoger la moción de reconsideración de la parte recurrida, intimando que *surgieron cambios en la necesidades o circunstancias del menor* que justificaban tal curso de acción.

Sobre ello baste indicar que, para probar que ha acontecido un cambio sustancial que amerite modificación de pensión alimentaria, no basta con cualquier cambio en las circunstancias que dieron lugar al establecimiento de la pensión alimentaria, sino que la alteración que justifica la modificación de la cuantía de la pensión ha de ser importante, no cualquier variación. *Ex parte Negrón Rivera y Bonilla*, supra, pág. 78. Una vez la pensión alimentaria ha sido estipulada por las partes, la alteración del referido convenio, antes de transcurrido los tres años, *procederá únicamente cuando exista un cambio sustancial en las circunstancias que dieron lugar o que lo originaron. McConnel v. Palau*, supra, págs. 747-748. Las circunstancias que pueden constituir cambios sustanciales, esto es, que pueden llevar a la modificación de un decreto alimentario antes de que transcurran los tres años son: (i) cuando están presentes cambios significativos o imprevistos en las circunstancias de cualquiera de las partes; (ii) cuando se desconocía información, por causas no imputables a la parte perjudicada por el decreto; (iii) cuando la aplicación de las guías mandatorias resulta en una cantidad diferente a la pensión corriente decretada en la orden o sentencia objeto de solicitud de modificación, o (iv) cuando existe una situación de salud de un alimentista menor o incapacitado. *Id.*, pág. 749. No reconozco que

hubiese acontecido ninguna de estas circunstancias, a partir de que el TPI aprobara la estipulación de la pensión alimentaria por las partes.

Ya he mencionado que, indudablemente la parte recurrida contaba con la información sobre gastos escolares del menor en fecha anterior a la estipulación acordada por las partes sobre pensión alimentaria, de manera que no existía aquí *cambios significativos, imprevistos* o *que se desconocieran* por las partes al momento de estipular la pensión alimentaria. Es decir, al presentarse la moción de reconsideración no existía cambio sustancial alguno en las condiciones que dieron lugar a la aprobación por el Tribunal de la estipulación de la pensión alimentaria tan solo unos días antes.

Pero, peor aún, el TPI decidió modificar la estipulación alcanzada por las partes sin celebrar vista alguna, por tanto, sin contar con prueba que sustentara las alegaciones de la recurrida en su moción de reconsideración. Nuestro Tribunal Supremo ha establecido que, para que proceda declarar con lugar una solicitud de modificación de pensión, cuando aún no han transcurridos los tres años, "la situación evidenciaria dependerá de si se trata de una solicitud de aumento o de una solicitud de reducción. En el primer caso, el peso de la prueba recae sobre el reclamante del aumento, quien debe demostrar que ha ocurrido un cambio sustancial en las circunstancias que estaban presentes al fijarse la pensión. En el segundo caso, el peso de la prueba recae sobre el que solicita la rebaja". *McConell v. Palau*, supra. Sin embargo, mediante una escuetísima *Resolución,* el TPI determinó aumentar la pensión alimentaria estipulada por las partes, sin haber ordenado, mucho menos celebrado, una vista evidenciaria para permitir que la parte promovente de la petición, la recurrida, desfilara prueba con la que demostrara el *cambio sustancial* que justificar tal acción.



Finalmente, el Tribunal Supremo ha enfatizado que el establecimiento de una pensión alimentaria requiere considerar la proporcionalidad en la que el alimentante pueda contribuir a esta, a partir de los recursos económicos con los que este cuente. Por ello, "la cuantía de los alimentos se fija de forma proporcionada, no solo a las necesidades del alimentista, **sino también a los recursos que el alimentante tiene a su disposición**". *Chévere v. Levis*, 150 DPR 525, 534 (2000). (Énfasis provisto). En consonancia, las personas legalmente responsables habrán de contribuir con el pago de la pensión alimentaria, "en la medida que sus recursos lo permitan". *Santiago, Maisonet v. Maisonet Correa*, 187 DPR 550, 559 (2012).

Ante lo cual cabe preguntar, una vez más, ¿cómo el TPI accedió al aumento de la pensión alimentaria sin convocar una vista evidenciaria donde ponderar prueba para verificar si los recursos a disposición del alimentante se lo permitían? ¿Dónde está la ponderación sobre proporcionalidad en tal dictamen?

Juzgo que lo hasta aquí expuesto es suficiente para ilustrar las razones por las cuales hubiese revocado la determinación recurrida, sin requerir extenderme más en mi respetuoso disenso.

En San Juan, Puerto Rico, a *18* de mayo de 2025.

Nery Enoc Adames Soto
Juez de Apelaciones

